# United States District Court

DISTRICT OF _____ DELAWARE _____

*3*

UNITED STATES OF AMERICA

v.

DAVID HANCOCK and
MIGUEL ALCANTARA

Criminal Complaint 07- **67 M MPT**



(Name and Address of Defendant)

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about April 11, 2007, in New Castle County, in the District of Delaware defendant,

David Hancock and Miguel Alcantara (Track Statutory Language of Offense)

did conspire to possess with intent to distribute, and attempt to possess with intent to distribute, more than 500 grams of cocaine, a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 846 and 18 U.S.C. § 2

in violation of Title _____ United States Code, Section(s) __see above_____.

I further state that I am a(n) __Special Agent, DEA_____ and that this complaint is based on the following facts:
Official Title

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:     YES

Signature of Complainant
Michael Machak
Special Agent
Drug Enforcement Administration

APR 13 2007

Sworn to before me and subscribed in my presence,

__April 13, 2007_____     at __Wilmington, DE_____
Date                                          City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name & Title of Judicial Officer     Signature of Judicial Officer

## **AFFIDAVIT**

I, MICHAEL MACHAK, having been duly sworn, depose and state as follows:

1.    I am a Special Agent (S/A) with the Drug Enforcement Administration (DEA),
United States Department of Justice and have been so employed since 1998.  Prior to my
employment with the DEA, I was employed as a Police Officer with the Fairfax County
Police Department, Fairfax, Virginia for approximately five years.  I am currently
assigned to the DEA Wilmington, Delaware Resident Office, the primary focus of which
is to conduct investigations of individuals and organizations that distribute heroin,
cocaine base (crack cocaine), powder cocaine, marijuana, and other illicit drugs.

2.    During my law enforcement tenure, I have participated in several hundred
investigations involving the unlawful distribution of narcotics in violation of federal and
state laws, which led to arrests, convictions of violators, and seizures of narcotics and
proceeds gained from illegal activity.  In the course of my duties, I have conducted or
participated in physical and electronic surveillance, undercover transactions, the
execution of search warrants, debriefing of informants, interviews of witnesses, reviews
of tape-recorded conversations involving drug trafficking activities, and analyses of
telephone toll records and other records kept by or relating to drug traffickers.  I have
received countless hours of training in various investigative techniques and through my
training, education and experience, I have become familiar with the identification of
illegal drugs, methods in which illegal drugs are imported, manufactured and distributed;
methods of payment for such drugs; and methods used by drug traffickers to avoid law
enforcement detection, including methods used to disguise the source and illegal nature
of drug proceeds.  I have attended numerous schools and seminars that specialized in all

1

aspects of narcotics investigations. I continue to keep abreast of current trend and

practices of drug traffickers by reading periodicals, intelligence bulletins/briefs, and

training literature. Additionally, I maintain daily contact with Special Agents, other law

enforcement personnel, confidential sources, and sources of information to remain up to

date with current trends of drug traffickers.

## BASIS OF PROBABLE CAUSE

3.       This Affidavit is based upon my own personal knowledge, as well as information

provided to me by other law enforcement officers in the State of Delaware, specifically

Detective Danny Silva, City of Wilmington Police Department Vice/Drug Unit. Because

this Affidavit is solely for the purpose of establishing probable cause, not all facts

relating to the investigation are included herein.

4.       In April 2007, law enforcement received information from Confidential

Informants that an individual, "John Doe" was responsible for the distribution of

kilogram quantities of powder cocaine in the State of Delaware.

5.       On April 10, 2007, law enforcement executed a State of Delaware Search Warrant

at the residence of John Doe in the city of Wilmington, Delaware. As a result of the

search warrant a total of approximately 14 ounces of powder cocaine were seized from

the residence and vehicles associated with John Doe. In addition approximately $6,000

US Currency of suspected drug proceeds was seized from inside the residence. John Doe

was arrested and is currently being held in the State of Delaware on State drug trafficking

charges. At the time of John Doe's arrest, a law enforcement officer ("Officer 1") seized

the cellular telephone from John Doe's person. Officer 1 maintained custody of the

cellular telephone in an attempt to identify possible co-conspirators, sources of supply,

and/or customers associated with John Doe and his drug trafficking organization.

6.      On April 11, 2007, Officer 1 was processing evidence as it related to John Doe's arrest. During that time John Doe's cellular telephone rang at which time Officer 1 answered the telephone in an attempt to further the investigation. Upon answering the telephone, Officer 1 was greeted by an unknown male voice. The phone's caller ID identified the individual by a nickname of "PERU." As described below, PERU was later identified as Miguel Alcantara (Date of Birth:        1985). During the call Miguel Alcantara asked Officer 1 for his identity. Officer 1 replied that he was one of John Doe's "boys". Miguel Alcantara, through the use of coded language, asked Officer 1 if he (Officer 1) was the one who brought the kilogram of cocaine to him (Alcantara) last time. Officer 1 indicated this was correct. Miguel Alcantara then asked in "coded language" if Officer 1 could provide him with a kilogram of cocaine for "24" ($24,000.00). Officer 1 told Miguel Alcantara that he would call him back. This conversation and all future conversations between Officer 1 and Miguel Alcantara were in Spanish.

7.      Shortly thereafter Officer 1 placed an outgoing call to Miguel Alcantara on his cellular telephone. During the tape recorded call, Officer 1, using "coded language," re-confirmed with Miguel Alcantara that Alcantara wanted one kilogram of cocaine for the price of $24,000.00. Miguel Alcantara confirmed and requested that he receive the cocaine as soon as possible. Over the course of the next several hours Officer 1 had several tape recorded conversations with Miguel Alcantara arranging the place and time to meet to conduct the drug transaction. A final agreement was reached between Officer 1 and Miguel Alcantara to meet in front of John Doe's residence on                    in

3

Wilmington, Delaware on or around 10:00pm on April 11, 2007.

8.      During the negotiations, Officer 1 came to believe that Miguel Alcantara was "brokering" the drug transaction for another person. As discussed below, this person was later identified as David Hancock, date of birth:          1974. For example, during the conversations with Officer 1, Miguel Alcantara told Officer 1 that he was going to charge the "black" guy $25,000.00 and asked Officer 1 to give Alcantara an additional $2,000.00 for "brokering" the deal.

9.      At approximately 10:00 p.m., law enforcement officers established surveillance in the                              Wilmington, Delaware. At approximately 10:26pm, Officer 1 received an incoming call from Miguel Alcantara stating that he was on his way. Officer 1 re-confirmed that the "other guy" was in possession of the $25,000 for the purchase of a kilogram of cocaine. Miguel Alcantara affirmed.

10.     At approximately 10:32 p.m., Officer 1 observed a Nissan Altima pull into the driveway of John Doe's residence. The vehicle was occupied by a person later identified as Miguel Alcantara. At the same time a second vehicle, a blue colored Chevrolet Trail Blazer, parked on the street directly in front of John Doe's residence.

11.     Shortly after the vehicles parked, Officer 1 received an incoming call from Miguel Alcantara stating that he was here. At the same time of the call, another officer, Officer 2 observed the person later identified as Miguel Alcantara exiting the driver's side of the Nissan Altima while talking on a cellular telephone. At the same time Officer 2 observed a black male (later identified as David Hancock) exit the driver's side of the Chevrolet Trail Blazer walking towards the person later identified as Miguel Alcantara.

12.     At that time, law enforcement officers converged on the location in an attempt to

4

arrest Miguel Alcantara and David Hancock.  As law enforcement officers were arriving

at the location, Miguel Alcantara and David Hancock attempted to flee by running in

opposite directions of one another.  Short foot pursuits ensued and Miguel Alcantara and

David Hancock were arrested.

13.     During a search incident to arrest by Officer 2, Miguel Alcantara was found to be

in possession of approximately one (1) ounce of marijuana, which was later field tested

with positive results.  Miguel Alcantara was also in possession of approximately

$1,100.00 in U.S. Currency and the cellular telephone that had been used to call Officer

2. An inventory search of Miguel Alcantara's vehicle revealed four (4) knotted plastic

bags of an off white rock like substance, crack cocaine, weighing a total of approximately

3.7 grams.  The crack cocaine was field tested and yielded positive results.

14.     During a search incident to arrest by Officer 1 and another officer, David

Hancock was found to be in possession of approximately $25,370.00 US Currency which

was dispersed throughout David Hancock's pants and jacket pockets.

15.     David Hancock was verbally advised of his Miranda Warnings by Officer 1 at the

time of the arrest.  David Hancock acknowledged verbally that he understood his

Miranda Warnings.  Hancock stated that he was at the location in order to purchase a

kilogram of cocaine for the price of $25,000.00.  Furthermore David Hancock said that

he has never personally met the source of supply that he referred to as a Dominican male,

but that Miguel Alcantara knew the individual and Miguel Alcantara was responsible for

putting together the deal.  David Hancock signed an Attorney General's Office

Notification of Forfeiture Form acknowledging that he was the owner of the $25,370.00

U.S. Currency.

16.    An indices check in the State of Delaware showed no reported income/wages reported by David Hancock in the year 2007. A review of the Delaware Justice Information System revealed that David Hancock has four prior State of Delaware felony drug convictions to include: Possession of a Schedule II (crack/cocaine) within a 1,000 feet of a school, Distribution, Delivery, and/or Possession of a Controlled Substance with 300" feet of a park, Conspiracy-2nd degree as it related to Trafficking cocaine between 5-50 grams, and Trafficking in cocaine 5-50 grams.

17.    Miguel Alcantara was verbally advised of his Miranda Warnings by Officer 1 subsequent to his arrest. Miguel Alcantara acknowledged verbally that he understood his Miranda Warnings. During an interview with Miguel Alcantara, Officer 1 acknowledged his role as the other individual on the telephone with whom Miguel Alcantara communicated. Miguel Alcantara stated, in essence, that if that was true, then Officer 1 knew that Alcantara was making $3,000.00 for "brokering" the deal. Miguel Alcantara also advised Officer 1 that he is currently pending State of Delaware drug charges. A review of the Delaware Justice Information System revealed that Miguel Alcantara has one State of Delaware felony drug conviction to include: Possession with Intent to Delivery a Schedule II controlled substance (crack/cocaine). Furthermore it was confirmed that Miguel Alcantara currently has the following charges pending: Trafficking in cocaine 10-50 grams, Possession with Intent to Deliver a Schedule II Controlled Substance (crack/cocaine), maintaining a vehicle for keeping controlled substances.

6

## Conclusion

It is my opinion that the facts and circumstances recited herein demonstrate that there is probable cause to believe that David Hancock and Miguel Alcantara conspired to possess with intent to distribute more than 500 grams of cocaine, and attempted to possess with intent to distribute more than 500 grams of cocaine, and aiding abetting the said violations, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

Your Affiant, having signed this Affidavit under oath, as to all assertions and allegations contained herein, states that its contents are true and correct to the best of his knowledge, information and belief.


**MICHAEL J. MACHAK**
*Special Agent, Drug Enforcement Administration*


Sworn to and subscribed before
me this 13th day of April, 2007.


**HONORABLE MARY PAT THYNGE**
**UNITED STATES MAGISTRATE JUDGE**

7