IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Cr.A. No. 07-60-GMS |
| | : | |
| DAVID HANCOCK, | : | |
| | : | |
| Defendant. | : | |

**MOTION TO SUPPRESS EVIDENCE**

**COMES NOW,** Defendant David Hancock, by and through his attorney, John S. Malik, and respectfully requests that this Honorable Court find that the detention, arrest, and search of the person of Defendant David Hancock on or about April 11, 2007 by Wilmington Police officers was illegal and in conducted in violation of Defendant Hancock's rights under the Fourth Amendment of the United States Constitution; and, that as a consequence, any and all items of evidence, including but not limited to any controlled substances and/or contraband, seized on or about April 11, 2007; and any and all statements taken from Defendant Hancock on or about April 11, 2007 must be suppressed from use as evidence at trial, based upon the following grounds:

**FACTS**

1. During early April of 2007, Special Agent Michael Machak of the Drug Enforcement Administration, "DEA", received information from a confidential source, "CS", that an individual identified as "John Doe" was selling kilogram quantities of cocaine from his residence. A search warrant was obtained and "John Doe's" residence was searched on April 10, 2007. Agent Machak and assisting officers seized

approximately 14 ounces of cocaine as well as $6,000.00 United States Currency from the residence and arrested "John Doe."

2.  After his arrest, "John Doe" was incarcerated in default of bail. Wilmington Police Detective Danny Silva retained possession of "John Doe's" cellular phone for further investigation. On April 11, 2007, one day after the arrest of "John Doe," the cellular phone began to ring. The caller identification feature of the phone indicated that the incoming call was from an individual named "Peru". Detective Silva answered the phone and indicated to the caller that he was one of "John Doe's boys." The subject, later identified as Miguel Alcantara, used coded language and asked Detective Silva if he was the person that had engaged in a drug transaction with him previously and Detective Silva indicated that he was that same subject.

3.  Mr. Alcantara thereafter inquired whether Detective Silva could provide a kilo of Cocaine for the price of $24,000.00. Detective Silva replied that he would get back to him at a later time. Shortly after recording equipment was obtained to audiotape the telephone call, Detective Silva placed a call to Mr. Alcantara and indicated that he could provide one kilogram of cocaine for $24,000.00 and that they should meet in front of "John Doe's" residence to complete the transaction.

4.  Detective Silva claimed that Mr. Alcantara was brokering the one kilogram cocaine deal for a third party since there was language used in the conversations that suggested Alcantara may have been acting as a middleman. However, at no time during the ensuing telephone conversations setting up the one kilogram cocaine deal was any information discussed regarding the name, physical description, or any identifying characteristics of the alleged third party purchaser for the one kilogram of cocaine.

[2]

Furthermore, during these telephone conversations, there was no description of the type of vehicle that the third party cocaine purchaser had or would use in carrying out the one kilogram purchase of cocaine. Lastly, Mr. Alcantara did not provide his own physical description or any description of the vehicle that he would be operating to conduct the cocaine transaction. In fact the only fact known to Detective Silva was that the third party was "a black guy" and that he would be arriving with Miguel Alcantara. Absolutely nothing further was known Alcantara, the third party purchaser, or either of their vehicles.

     5.     Detective Silva had arranged for the one kilogram cocaine transaction to occur at 10:00 P.M. at the home of "John Doe". Assisting officers had set up surveillance around the "John Doe" residence. At about 10:32 P.M., a Nissan Altima pulled into the driveway of "John Doe's" home and a subject later identified as Miguel Alcantara exited the vehicle. Shortly thereafter, a Chevrolet Trail Blazer parked on the street and a black male subject exited the vehicle and engaged Mr. Alcantara in conversation.

     6.     Detective Silva received a phone call from Mr. Alcantara after he exited the Nissan Altima advising that he had arrived. This phone call occurred just before or simultaneously with the Trail Blazer's arrival. Upon observing the two subjects conversing, Detective Silva and assisting officers, assuming that the black male was the would-be purchaser of the kilogram of cocaine, converged and arrested both subjects. It should be noted that no transaction took place and no money or contraband were observed prior to the arrest of Mr. Alcantara or Mr. Hancock.

7.     The detention of Defendant Hancock was not a Terry type stop but rather a full-blown felony arrest requiring probable cause.  When Mr. Hancock was searched incident to the arrest, he was found to be in possession of $25,370.00.  He later allegedly stated to law enforcement officers that he was present at the scene of his arrest in order to purchase a kilogram of cocaine.

## DISCUSSION

8.     The Fourth Amendment of the United States Constitution guarantees citizens the right "to be "secure in their persons, house, papers, and effects, against unreasonable searches and seizures."  In conducting a federal constitutional analysis as to whether probable cause for the arrest of an individual exists, the "totality of the circumstances" test set forth in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), must be utilized.  This test expanded upon the prior Aguilar-Spinelli test set forth by the United States Supreme Court for assessing whether tips provided by informants established sufficient probable cause to justify an arrest.  See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

9.     Furthermore, it is undisputed that a search of a suspect incident to a lawful arrest is a well-established exception to the warrant requirement.  See Chimel v. California, 395 U.S. 752 (1969).  A lawful arrest establishes the authority to search a person. United States v. Robinson, 414 U.S. 218, 235 (1973).  However, the warrantless arrest of a person must be preceded by probable cause that a crime had occurred, was occurring, or was about to occur and the existence or non-existence of probable cause is measured by a consideration of the "totality of the circumstances." Gates, supra.

10. While the totality of the circumstances in existence at the time Mr. Hancock parked his Chevy Trail Blazer near "John Doe's" residence may have established reasonable suspicion that a crime was occurring or was about to occur, this reasonable suspicion did <u>not</u> rise to the level of probable cause required by the Fourth Amendment to initiate a full-blown felony arrest of Mr. Hancock. The existence of reasonable suspicion permits only an investigatory or <u>Terry</u> stop that is limited in scope. By Agent Machak's admission in the Criminal Complaint, the officers converged on Mr. Hancock not simply to detain him, but rather to arrest him. The full-blown arrest of Mr. Hancock required probable cause in order to pass constitutional muster.

11. A review of the facts known to Detective Silva prior to his arrest of Mr. Hancock reveal that there was insufficient probable cause to justify Mr. Hancock's arrest. Specifically, Detective Silva had negotiated a drug transaction with an individual known only as "Peru" prior the arrest of Mr. Alcantara and Mr. Hancock. Mr. Alcantara set the price for the one kilogram of cocaine as well as the location for the transaction. Furthermore, Alcantara indicated that he was brokering the deal and that a "black guy" would arrive with $25,000.00 to consummate the sale. Alcantara arrived at the agreed upon time and even parked in the driveway to "John Doe's" residence. Furthermore, Alcantara made a confirmatory call to Detective Silva when he arrived; however, at no time did Alcantara ever indicate that the "black guy" who was to purchase the one kilogram of cocaine had arrived. It is clear that probable cause existed to arrest Mr. Alcantara; but, there were insufficient facts to justify the conclusion that the black male that was speaking with Mr. Alcantara was in fact the subject that was to purchase the one kilogram of cocaine.

12.     Based upon the totality of the circumstances, Detective Silva had reasonable suspicion to conduct a limited <u>Terry</u> investigatory stop of Mr. Hancock based upon his being in the general vicinity where the cocaine transaction was scheduled to take place one half hour <u>after</u> the transaction had been scheduled occur.  However, probable cause for Mr. Hancock's arrest did not exist.  Mr. Hancock did not engage in any conversations regarding the sale of cocaine or offer anyone any money with which to purchase cocaine.  Also, Mr. Alcantara never indicated to Detective Silva that, the "black guy" who was to purchase the cocaine had arrived.  Mr. Hancock was seen simply conversing with Mr. Alcantara on the street, something that he quite possibly could have been done just because he knew Mr. Alcantara for reasons wholly unrelated to any drug transaction.  Based upon the totality of the circumstances, the evidence was insufficient to establish that the black male was the same person that Mr. Alcantara had discussed on the phone with Detective Silva as being the third party purchaser of the cocaine.

13.     In <u>United States v. Capers</u>, 685 F.2d 249, 251 (8th Cir. 1982), police officers were conducting a search warrant on the home of Mr. Capers' co-defendant, Nathaniel Yancy, and located a large amount of cocaine as well as paraphernalia within Yancy's residence.  During the search, Mr. Yancy arrived at the residence with Mr. Capers and both individuals were arrested despite the fact that at that point, Mr. Capers had not been identified by the police and had not engaged in any overt criminal behavior.  In a <u>per curiam</u> opinion, the Eighth Circuit held, "…police had probable cause to arrest Yancy, however, the mere fact that Capers was in the company of a person who the police had probable cause to arrest would not suffice to establish probable cause to arrest Capers."

13.    It is Mr. Hancock's position that in the case <u>sub</u> <u>judice</u>, the officers involved essentially "jumped the gun" in conducting the felony arrest of his person. The officers did not affect a "<u>Terry</u> stop" or investigative detention that was permissible on mere reasonable suspicion. Instead, they carried out a full-blown arrest that required probable cause. The arrest was based solely on information from a subject named "Peru", later determined to be Mr. Alcantara, that a nondescript "black guy" would be buying the cocaine. "Peru" was not a known or past proven informant. Rather, he was an unknown person who placed an order for cocaine using a number that he had utilized in the past and who believed that he was speaking with a subject who could supply the requested cocaine.

14.    Obtaining confirmation that Mr. Hancock was in fact the person that intended to purchase the cocaine would have been relatively easy. For example, when Mr. Alcantara made the last phone call indicating that he had arrived at the agreed upon location, Detective Silva easily could have inquired whether the "black guy" was there waiting for the cocaine as well. No such communication occurred and it was just assumed that the black male speaking to Mr. Alcantara on the public sidewalk was the source of the $25,000.00 who intended to purchase the cocaine. It is submitted that these circumstances did not establish probable cause and that the arrest of the person of Mr. Hancock was conducted in violation of his rights secured by the Fourth Amendment of the United States Constitution. Defendant Hancock was not observed engaging in any suspicious activity and the officers involved could not have distinguished Mr. Hancock from any other black male in the area simply speaking with Mr. Alcantara on the street as

there were no characteristics identifying Mr. Hancock as the person intending to purchase the cocaine.

**WHEREFORE,** Defendant David Hancock respectfully requests that this Honorable Court enter an Order finding that the arrest and search of the person of Defendant Hancock on or about April 11, 2007 was conducted in violation of the Fourth Amendment of the United States Constitution in that said arrest was performed without probable cause and that any evidence seized or statements taken from Defendant Hancock on or about April 11, 2007 be suppressed from use as evidence at trial as "fruit of the poisonous tree." <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963).

                        Respectfully submitted,

                        /s/ John S. Malik
                        JOHN S. MALIK
                        100 East 14th Street
                        Wilmington, Delaware 19801
                        (302) 427-2247
                        Attorney for Defendant,
                         David Hancock

Dated: July 28, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Cr.A. No. 07-60-GMS |
| DAVID HANCOCK, | : | |
| Defendant. | : | |

## ORDER

**AND NOW, TO WIT,** this _____ day of _____, A.D., 2008, Defendant David Hancock's Motion for Suppression of Evidence having been duly heard and considered:

**IT IS SO ORDERED:**

That the arrest of the person of David Hancock on or about April 11, 2007 was conducted in violation of Defendant Hancock's rights under the Fourth Amendment of the United States Constitution and that as a result, any evidence seized or statements taken from Defendant Hancock on or about April 11, 2007 are hereby suppressed from use as evidence at trial as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471 (1963).

_____
THE HONORABLE GREGORY M. SLEET

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Cr.A. No. 07-60-GMS |
| DAVID HANCOCK, | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

I, John S. Malik, counsel for Defendant David Hancock, do hereby certify on this 29th day of July, A.D., 2008, I have caused two (2) copies of Defendant David Hancock's Motion for Suppression of Evidence to be served via electronic delivery upon the following individual:

        Robert F. Kravetz, Esquire
        Assistant United States Attorney
        Department of Justice
        1007 Orange Street
        Wilmington, Delaware 19801

        /s/ John S. Malik
        JOHN S. MALIK
        100 East 14th Street
        Wilmington, Delaware 19801
        (302) 427-2247
        Attorney for Defendant,
        David Hancock